THE PEOPLE, *ex rel.* Amor J. Williamson and Josiah W. Brown, *vs.* JONATHAN W. ALLEN, GEORGE H. PURSER and CHRISTIAN B. WOODRUFF.

The justice before whom proceedings under the revised statutes are pending, to obtain the delivery of books and papers pertaining to an office, must examine the question of the title of the respective claimants to the office, so far as to enable him to determine properly the question to be submitted; but if the right of the applicant is not free from any reasonable doubt, the summary relief provided for by statute, under these proceedings, should be denied. If the title of the applicant to the office is free from "reasonable doubt," he is absolutely entitled to the assistance which the statute contemplates.

When proceedings of that nature are brought before the general term on *certiorari,* it is the duty of the court to consider the claims of the respective parties to the office in dispute, for the purpose of determining whether or not the title is free from reasonable doubt, and thereupon whether the possession of the books and papers ought to be granted or refused to the applicants.

It was the plain intention of the legislature, by the first section of the act of April 14, 1859, in relation to taxes and assessments in the city of New York, which establishes a permanent system of annual assessment of taxes, and declares that immediately on the passage of the act there shall be appointed, by the comptroller of the city, three commissioners, who shall form a board, and be designated commissioners of taxes and assessments for the city and county of New York, who shall hold their office for the term of five years, and until others are appointed in their places, to confer the power of appointment of the board of commissioners upon the comptroller, and not upon the individual who held the office at the time the act was passed.

Such authority is a continuing power, by which the comptroller is authorized to appoint other commissioners, at the expiration of the term of five years from the first appointment.

After a new board of commissioners has been appointed, by the comptroller, the former board is no longer in office; and if they continue to hold the books and papers of the office, they detain them as individuals and not as the board of commissioners. Hence, a demand upon them as individuals is sufficient.

CERTIORARI to review proceedings instituted before the Hon. GEO. G. BARNARD, under the provisions of the revised statutes, (1 *R. S.* 124, 125,) to compel the delivery of books and papers by public officers to their successors.

*John McKeon* and *Wm. Curtis Noyes,* for the relators.

*Wm. F. Allen,* for the respondents.

*By the Court,* LEONARD, J. Proceedings were instituted in May last, before the Hon. GEO. G. BARNARD, one of the justices of this court, by Messrs. Allen, Purser and Woodruff, claiming to have been appointed to the office of commissioners of taxes, &c. against the relators here, Messrs. Williamson and Brown, who were before that time the incumbents, for the purpose of obtaining possession of the books and papers of the office, which the relators refused to surrender to the persons who had been so appointed. These proceedings resulted in an order directing the relators to deliver the books and papers to the new appointees, the defendants, Allen and others, or that, in case of default, they be committed to prison. These proceedings have been brought before the general term by certiorari, for review.

The revised statutes declare that whenever any person shall be removed from office, or the term for which he shall have been elected or appointed shall expire, he shall, on demand, deliver over to his successor, all the books and papers in his custody, as such officer, or in any way appertaining to his office. If any person shall neglect or refuse to deliver over to his successor any books or papers, such successor may make complaint thereof to any justice of the supreme court, who shall grant an order directing the person so refusing to show cause before him, within some short and reasonable time, why he should not be compelled to deliver the same. At the time appointed, the justice shall proceed to enquire into the circumstances, and unless the person charged with witholding such books and papers, shall make affidavit that he has truly delivered them to his successor, and it shall appear that they have been withheld, the justice is required, by warrant, to commit the person so withholding to the jail of the county, until he shall deliver such books and papers,

The People *v.* Allen.

or be discharged according to law; and the justice is author-ized to issue a search warrant to find such books and papers, and bring them before him.   (1 *R. S.* 125, §§ 50, 51, 52, 53, 54.)

It has been well decided that this statute can be put in operation only in a case where the claimant has a clear *prima facie* title to the office, free from reasonable doubt.   (*The People* v. *Stevens,* 5 *Hill,* 616, 631, *and note,* 631   *In re Whiting,* 2 *Barb. S. C. R.* 513.   *In re Baker,* 11 *How. Pr. R.* 430.)   These cases also hold, as well as numerous others, that in a case free from reasonable doubt in respect to the title to the office, it is the duty of the justice to proceed and protect the party elected or appointed to office, against the unlawful witholding, by his predecessors, of the books and papers of the office.   (*Cobee* v. *Davis,* 8 *How. Pr. R.* 367.) In the cases cited, the books and papers were withheld under a claim of title to the office; and the judge before whom the proceedings were pending, found it necessary to look into the title, for the purpose of ascertaining whether the right of the applicant was free from reasonable doubt.   Such an exami-nation is not a trial of the title to the office, because that is not the question involved.   The title remains wholly unaf-fected by the decision of the justice upon the question upon which the law requires him to pass, when a proper case is presented, by proceedings under this statute.   If the justice could be excluded from taking cognizance of the right of an applicant for the possession of books and papers, in every case where a plausible argument could be raised, or where the right or title to the office might depend upon evidence to be adduced by the rival claimants, discarding, in the case of an elective office, the certificate of election, and permitting oral testimony of fraud or irregularity in conducting the election, to raise a doubt in his mind in favor of the party withholding the official books, there would be few cases where relief could be afforded; and the statute would virtually be-come obsolete and of no effect.

In the case of *Baker*, cited above from 11 *How. Pr. R.* 430, he claimed to withhold the books and papers of the office of supervisor, on the ground that the officers conducting the election, at which the party who claimed to be his successor had been a candidate for that office as well as himself, had been guilty of misconduct, and that the election was irregular. The irregularities and misconduct complained of do not appear to have been disputed, and on a trial of the title of the parties to the office in question, might have resulted in favor of Baker, who had been the incumbent previous to the election. It was held by Judge Theron R. Strong that the certificate of the canvassers was *prima facie* evidence of title to the office, and conclusive until it was overcome by judgment, on a trial of the question of title, and Baker was held to be properly imprisoned in the county jail until he should surrender the books and papers of the office as he had been adjudged to do. The opinion of Justice Clerke, of this court, in the case of *Bartlett*, decided in 1854, and reported 9 *How. Pr. R.* p. 414, is directly in point. Judge Clerke says in that case that "the object is to compel the delivery of the books and papers by a summary proceeding, to which any person duly appointed to an office is absolutely entitled, without any qualification or reservation. The only questions to be ascertained by the judge, to whom the application is made, are, has the predecessor been legally removed, and has the claimant been legally appointed." (*p.* 416.)

The opinions in the celebrated case of *Conover* and *Develin* nave been much relied on by the learned counsel for the relators in this case. The opinion of Judge Peabody, in the *Matter of Conover*, (5 *Abb. Pr. R.* 74,) has been cited as a correct interpretation of the law, although conceded to have been badly applied. In that case the learned judge held that Conover having been in possession of the books and papers of the office of street commissioner, and having in one instance performed some duty pertaining to the office, he was

The People *v.* Allen.

in office *de facto,* and that he would not look into the title
of the respective claimants, *de jure;* that the abstract right
of the applicant was unimportant where possession was
clearly shown ; that it should not be inquired into further
than to see that, if in possession, he has *color of title;* that
being in the office under *color of right,* he should have the
proceedings to get the books and papers ; and on the other
hand, that having the best possible right to an office, one
should not have possession of the books and papers by this
proceeding, while it is apparent he is not in the occupancy
of office, and not in a situation to exercise the functions of
it. (*Vide p.* 79.) This amounts to a denial of relief while
another party is in possession, and holds under a claim, how-
ever unfounded, that he is entitled.

Upon this theory, the learned justice, in the case of *Con-
over,* closed his eyes to the fact, which he did not assume to
investigate, that Develin had the clear and undoubted right
to the office and to the possession of the books and papers.
There was no ground for a reasonable doubt in the case as
to the right of Develin, and in refusing to look into the
question of title, for the purpose of ascertaining whether it
was clear, and free from reasonable doubt, the authority of
preceding decisions was denied. Having, on this ground,
overlooked the actual rights of the parties, the judge pro-
ceeded to direct the delivery of the books, &c. to the party
who had no title to the office, and to imprison Develin for
not complying with his order.

The case again appears in the same volume, (5 *Abb. Pr.
R.,*) several times. The opinion of Judge Ingraham, (*page*
301,) is also cited. The question came before him on *habeas
corpus,* sued out by Develin to obtain his discharge from the
alleged unlawful detention under the process issued in the
said proceedings before Judge Peabody. The question of
jurisdiction to grant the order for the refusal to comply
with which Develin had been imprisoned, was the only sub-
ject which then came under discussion.

Judge Ingraham, in a review of the authorities, showed that Judge Peabody had misapprehended the statute under which he acted, in holding, that possession under color of title, or the possession of an office *de facto,* entitled a party to the books and papers of an office as against a claimant who was entitled to them *de jure;* that it was only in cases where there was a reasonable doubt as to the title to the office, that relief under the statute in question was to be refused. Judge Ingraham, after admitting that he could not look into matters of fact proven before Judge Peabody, and upon which he had passed, proceeds to examine the statements of Conover in respect to his title to the office, contained in the papers upon which his application was founded, and arrives at the conclusion that Judge Peabody was " without jurisdiction to commit Develin, because Conover showed upon the face of his papers that his appointment was unauthorized, and conferred upon him no authority to take or hold the office, and because he sought on the face of his complaint, to take such books and papers from another, who claimed to hold the office by a better title than himself," (5 *Abb. P. R.* 315,) and he directed the discharge of Develin from detention.

The same case was again before this court on an application for a certiorari, and Justice Sutherland, in a very learned and able opinion, shows the error which Judge Peabody had fallen into in respect to the rule of law in regard to the acts of officers *de facto,* valid as to third parties, but invalid as to himself, and holds this language in reference to the question of title and the right to investigate that subject in such proceedings : "One of them, and only one of them, had the legal right or title to the office or to the books and papers. * * * It was simply a question of law who had the appointment—the governor or the mayor and aldermen. * * * Unless, therefore, I should hold that Mr. Conover's title to the office and to the possession of the books and papers, as shown in the proceedings before Judge

The People v. Allen.

Peabody, was so clear and free from doubt that Judge Peabody was at once justified in making the order for the delivery of the books and papers to him by Mr. Develin, I ought to allow the writ of certiorari." (6 *How. Pr. R.* 236, 237.)

With the exception of the opinion of Judge Peabody, the decisions in the case of *Conover* and *Develin* affirm the principle that the justice before whom proceedings are pending to obtain the delivery of books and papers pertaining to an office, must examine the question of the title of the respective claimants to the office, so far as to enable him to determine properly the question to be submitted; but if the right of the applicant is not free from any reasonable doubt, the summary relief provided for by statute under these proceedings must be denied. If the title of the applicant to the office is free from "reasonable doubt," he is absolutely entitled to the assistance which the statute contemplates.

We find, then, that it is our duty to consider the claims of the respective parties to the offices in dispute, for the purpose of determining whether or not the title is free from reasonable doubt, and thereupon, whether the possession of the books and papers ought to be granted or refused to the applicants.

The board of commissioners of taxes was created in 1859. (*Sess. Laws, ch.* 302.) The first section of the act declares that immediately upon the passage of the act there shall be appointed by the comptroller of the city of New York, three commissioners, who shall form a board and be designated commissioners of taxes and assessments for the city and county of New York, who shall hold their office for the term of five years and until others are appointed in their places. Any vacancy in said board of commissioners, from death, or resignation, or otherwise, shall be filled by said comptroller for the balance of the term for which such commissioners are appointed.

It is insisted that the act creates but one term, and that

its force is exhausted by the creation of the board which the comptroller, who held office at the time the act was passed, was directed *immediately* to fill by appointment. That the power of appointment was conferred upon the person who then held the office of comptroller, and cannot be exercised by a subsequent comptroller, for the appointment or organization of another board of commissioners after the expiration of the term of five years for which the first commissioners were appointed.

While it must be conceded that there is no express language for the creation of continuous terms, or successive boards of commissioners, it should be also observed that the act does provide for the performance of the same duties for an indefinite succession of years. Unless the act should be altered or repealed, it contains the permanent system for assessing the annual taxes upon the property of the people of the city and county of New York. The construction urged on behalf of the board first appointed, and who are now in possession of the books and papers of the office, implies a solecism in our system of government and in the official term of this board. Assuming the correctness of that construction, then no vacancies occurring in the board can be filled after the expiration of five years for which the first commissioners were appointed, because it is only for the balance of the term that vacancies are to be filled, and five years from the time of their appointment expired on the third of May, 1864. Should one or more members of that board die to-day, if the position of the relators is well founded, the machinery for assessing taxes would be destroyed, and none could be assessed or collected till after fresh legislation should be had to set the machinery in motion. The history of the parties in power and the exalted character of the comptroller of the city, in office when the act was passed, have been referred to, in order to establish a probability that it was the intention of the legislature to frame the act which they had adopted as a law, and which we are now considering, so

that the power of appointment could not be exercised by any subsequent comptroller.

We must hold that the legislature always truly express their intention, so far as it is expressed at all, and not that something different is meant from the ideas which the language conveys. The legislature had the power to enact any law which the majority approved; and if it was their intention to have the board continue for one term only, it would have been expressed in apt and proper language, and not have been left to inference from the obscure and indefinite terms employed. It is not urged that the indefinite provisions in respect to the continuance of the board for successive terms, was the result of accident or oversight on the part of the law makers, but that it was their intention to create but a single term. Such a construction is incongruous with the other provisions relating to a permanent and continuous system for assessing taxes, and not in harmony with the usual course of legislation. Internal evidence of the intention of the legislature, drawn from the act itself, must control in ascertaining the meaning, rather than external evidence in respect to the motives that actuated them, derived from the report of contemporaries. The whole act must be construed harmoniously if possible, so as to give effect to every provision; and in so doing we shall best find its meaning and the intention of the law givers.

The first appointees were to hold their office for five years and *until others are appointed in their places.* Had the word successors been used instead of " others," it would have been hardly possible to have raised an argument. But is the word " others " any less significant? " Others " are to be appointed, in the contemplation of the act. True, the first are to hold until the new appointments have been made. The legislature cannot themselves exercise any power of appointment to office. The act does not say that the first board shall hold until further legislation; but that is the effect of the construction insisted on by the learned and

ingenious counsel for the relators. Had nothing been said in the act, in reference to appointing "others" at the expiration of the term of five years, there would be better reason for accepting the theory of one term only. But why mention the appointment of "others" after the expiration of five years, if, as insisted, no appointment can now be made?

Are the first board to hold during their joint lives unless the act is amended? Can that have been the intention? If so, then why limit the term to five years, as the act has done in express language? The legislature have used language to express the idea of the expiration of the term of the first board in five years, and the appointment of others at that time, in their places. In my opinion it will not be a correct interpretation to hold that the act means any thing different from that which it so plainly expresses. The word "immediately," in the first section, refers only to the appointment of the first board. It cannot have the effect to prolong the term of that board, which is limited to five years, so that a new board may not be appointed, nor to prevent a continuous exercise of the power of appointment. The power of appointment is conferred upon the comptroller as an officer, and not upon the gentleman, now deceased, who then filled that office.

As a further test of the meaning of the statute, let us consider what is expressly provided, and in what respect there is any thing indefinite or omitted.

1st. The act provides a continuous and permanent system for the assessment of taxes; perpetual unless altered by future legislation.

2d. A board of commissioners to carry it into effect. The term of the first board is fixed at five years.

3d. The appointment of other commissioners at the expiration of the term of the first board.

4th. The officer is named who is expressly directed to appoint commissioners.

The statute omits to mention the term for which the second

and subsequent boards shall hold office, and also omits to direct the comptroller to appoint new commissioners at the expiration of five years. The principal object to be attained is the assessment of taxes; the appointment of officers is secondary; and is the means, only, for carrying the principal object into effect. If it was the intention of the legislature that no subsequent appointments were to be made after the expiration of five years, then it must be conceded that it was also their intention that the term of the first board should not be limited to five years, although that time is named as the extent of the term, but should continue till further legislation was had authorizing the appointment of new commissioners, which might extend the term to an additional period of twenty years or more, should the joint lives of the first commissioners so long continue. I do not deny that the legislature may create an office to continue for the life of the incumbent, but the creation of such a term cannot be implied; it must be created by language apt and express for that purpose. It has been said that such was the intention of the framers of the law. It may be conceded that such design existed on the part of those who prepared the law, and of some members of the legislature; but to hold that the majority so intended, would be to assume that the legislature had a covert intention to commit an act of unusual legislation, inconsistent with the permanent operation of a law which purported to be perpetual, and with the terms by which every other office in the state is held, which they were unwilling to avow in express language. It would be equally improper to believe, or to hold, that the minority hoodwinked the majority as to the effect of the law in this respect.

Having reference then to the principal intention of the statute, it is the duty of the court to give effect to every provision of it, unless they are wholly inconsistent and irreconcilable. Should we hold that the power to appoint " others in the places" of the first board at the expiration of five years

is inoperative, we should plant the seeds of an early termination to the execution of a law which has the intention of the law givers clearly manifested that it shall be permanent.

We hold, therefore, that it is the plain intention of the statute to confer the power of appointment of the board of commissioners upon the comptroller, and not upon the gentleman who held the office at the time the act was passed, and that such authority is a continuing power, by which the comptroller is authorized to appoint other commissioners at the expiration of the term of five years from the first appointment. To hold any different rule would have the effect to make the secondary subject control and defeat the principal object of the statute; or to convert the secondary into the paramount object of the law. We find ourselves fortified in this construction by a reference to the opinion of Judge Denio in the case of *Weed* v. *Tucker*, (19 *N. Y. Rep.* 422.) In that case the learned judge denies the proposition that where power is granted to particular officers by the legislature, it is to be construed as limited to a single exercise of it, unless the statute in plain terms provides for its exercise on more than a single occasion. (*Id.* 432.)

There was a preliminary objection raised, or rather a technical one, that the demand for the books and papers being made of Messrs. Williamson and Brown as individuals, and not as a board, was insufficient. They deny that any demand was made, and they also deny that Messrs. Purser and Woodruff have been appointed to the office of commissioner. This denial of the appointment is considered to be justified as a legal conclusion, because the present comptroller, as the late board insist, has no authority to make an appointment. The written appointment of the defendants by the present comptroller is annexed to the moving papers, and its due execution is not denied.

We have already held that the comptroller has the power of appointment; the denial, therefore, cannot be sustained. The appointment of the new board of commissioners being

valid, it follows that the late board are no longer in office, and that they detain the books and papers as individuals and not as the board of commissioners, for they had ceased to hold office when the demand was made.

The certiorari must be quashed and the proceedings of the justice affirmed, with costs.

