Westbrook, J.
Mr. John F. Bridgman, claiming to be the chamberlain of the city of Troy, applies for an order compelling Mr. Benjamin II. Hall, who also claims title to, and is in the actual possession of, such office of chamberlain, to surrender to him the books and papers appertaining to said office.
The claim is based upon the following facts : The charter of the city of Troy creates the office of chamberlain (chap. 30, Laws of 1880, sec. 2), who, unless he is removed in the manner specified in such charter, holds the office for three years.
The chamberlain is nominated by the mayor and confirmed by the common council of the city. A person, however, who is nominated by the mayor to the common council “shall be ■deemed to be confirmed by said common council, from the date of said nomination, unless within ten days after said nomination shall be sent to the common council the said common council shall, by a vote of two-thirds of all the members ■elected, reject the said nomination.and so notify the mayor of such rejection ” (Chap. 30, Laws of 1880, sec. 3).
“ In the event of the sickness or absence of the chamberlain, if he shall neglect to appoint some suitable person to discharge the duties of the office, the mayor may appoint some suitable person, to be approved by the common council, to discharge the duties of such office during such sickness or absence ” (Charter of Troy, Laws of 1870, chap. 598, tit. 2, sec. 4).
In September, 1877, Mr. Henry S. Church was made chamberlain. On October 7,1881, said Church was nominated and confirmed for the second term. He qualified under his second appointment, but having given no new bond his subsequent action as chamberlain must probably be deemed to have been under the original and not the new appointment {Charter, chap. 598, Laws of 1870, tit. 2, seo. 4, and seo. 20, tit. 6, seo. 6).
On the 7th of February, 1884, Church absconded, being a *175 defaulter to a large amount, and did not return to the city of Troy until the latter part of March, 1881, when he was brought there as a prisoner.
On that day (Feb. 7, 1884), Mr. Edward Fitzgerald, the mayor of the city, addressed a communication to the common council in which he stated to that body it was his “painful duty to inform ” them “ that Henry S. Church, the chamberberlain of the city, has abandoned his office and, according to all accounts, has left the city. A partial investigation and examination of his accounts this day made render it morally certain that he is a defaulter to the city in a large amount. Under these circumstances and in pursuance of the provisions of the charter, I do hereby appoint, subject to your approval, Benjamin H. Hall, to discharge the duties of the office of chamberlain during the absence of the said Henry S. Church.”
This appointment was approved by the common council, and under it Mr. Hall is exercising and discharging the duties of chamberlain, claiming to be the lawful possessor of the office and the proper custodian of its books and papers.
In the latter part of March, 1881, as has already been stated, Church was brought back to the city of Troy under arrest. On April 2,1S81, he transmitted to the mayor (Fitzgerald) a resignation of the office of chamberlain. Some time prior to January 15, 1885, this resignation was accepted by the mayor, who on that day sent a communication to the common council in which were detailed all the circumstances attending Mr. Hall’s appointment, which he claimed was “ temporary,” and concluded as follows : “ In view of these facts, I have the honor to nominate to the office of chamberlain, for the ensuing term of three years, John F. Bridgman, and the same is respectfully submitted to your honorable body as provided by law.”
This nomination was not rejected by a two-third vote and in consequence thereof, as claimed imbehalf of Mr. Bridgman, the nomination was confirmed.
After an attempt under this appointment to obtain q>osses *176 sion of the office by force, which was partially successful, which attempt was, however, restrained by this court and the possession of the office restored to Hall in a suit brought by Hall against Bridgman, an action by the people on the relation of Bridgman against Hall, for the purpose of ousting Hall from the office and also placing Bridgman in possession thereof, was commenced.
This action was brought to trial at the Bensselaer circuit in May, 1885, and resulted in a verdict in favor of the defendant upon both issues, upon which judgment was perfected which adjudges and decrees “that the relator, John F. Bridgman,is not the chamberlain of the city of Troy, and that the defendant, Benjamin H. Hall, is the chamberlain of the city of Troy and has been such chamberlain since the 26th day of January, 1885.”
The judgment also contains this further clause: “ But nothing herein contained shall prejudice any right on the part of the people of the state of Hew York, or any person who, since the rendition of the verdict herein, shall have been or shall hereafter be duly appointed to the office of chamberlain of the city of Troy, and shall qualify as required by law.”
On May 21, 1885, mayor Fitzgerald addressed another communication to the common council of the city of Troy, in which he recites the various matters hereinbefore detailed, and concludes thus: “How, therefore, I have the honor to nominate John F. Bridgman, of this city, as chamberlain of the city of Troy for the ensuing term of three years.”
The vote of the common council, which was immediately taken, was two in favor of confirmation and ten against it. The president announced that the nomination was confirmed because not rejected by a two-third vote.
Under this last appointment, Bridgman having qualified and given a bond, which has been duly approved, claims the office of chamberlain of the city of Troy, and institutes this proceeding, after Mr. Hall had, on demand made, refused to> *177 surrender them to him, to obtain the books and papers belonging to such office.
A preliminary objection made in behalf of Mr. Hall must be first considered, which is this: Do the provisions of the Devised Statutes under which this proceeding is instituted apply to the office — chamberlain or treasurer of a municipal corporation created by special charter—which each of the parties to this proceeding claim to be entitled to ?
If this was an original question, now for the first time presented, there would, as it seems to me, be no difficulty in giving it a negative answer. The proceeding is instituted under article 5, title 6, chapter 5 and part 1 of the Devised Statutes (1st ed., 114; 1 R. S. [2d ed.], 114; 1 R. S. [7th ed.] 376). The chapter is entitled (1st ed., 85): “Of the public officers of this state, other than militia and town officers; their election or appointment; their qualifications and the tenure of their offices.” Title one of that chapter is entitled (1st ed., 86): “ Of the number, location and classification of tho public officers of the state.” That title then proceeds' to classify, name and locate the officers, who in the title of that chapter are called “ the public officers of this state,” and in that title “ the public officers of the state,” and among them is no such officer as these parties profess to be. Article 5 of title 6 (that under which the present proceeding is instituted) is entitled (1st ed., 114): “ Proceedings to compel the delivery of books and papers by public officers to their successors.”
From this statement it would seem reasonably clear that the term “ public officers,” used all through the chapter, and who are also therein called “ the public officers of this state ” and “ the public officers of the state” and who are also named, located and classified in the same chapter, cannot possibly include an officer not named, and who, instead of being one of “ the public officers of this state ” or “ of the state,” is simply and only an officer of a municipality or city created by special charter. It would seem to be almost as proper, in the absence of an express statute, to call an officer of a railroad *178 or other corporation a “ public officer of the state ” as to call a public officer of a city, created by special charter, by that name.
The difficulty, however, with this line of thought is that the practice has been the other way in the state, and courts and judges have, though without the point being made, acted upon the assumption that the statute reaches officers of the character of that which this proceeding involves. Sitting as a single judge, the officer to whom this ajiplication is made dislikes to disturb a long practice, but certainly the point is well worthy of the attention of an appellate tribunal. While refusing, therefore, to dismiss the present application upon this ground alone, the point nevertheless adds one more difficulty to several others about to be.stated, which compel the denial of the present application.
Conceding, howTever, that the statute is applicable to a city officer not named therein, should the order asked for by Hr. Bridgman be granted ?
The current of authority is that only in a clear case, or in one free from reasonable doubt, should the authority conferred by the statute be exercised (Matter of North agt. Cary, 4 N. Y. Sup. Ct. R., 357; The People agt. Allen, 42 Barb., 203 ; People agt. Allen, 51 How, 97, 99, 100). The case should be very clear, because the revisers of our statutes, in reporting the provision, said (3 R. S. [2d ed.], 444): “ It has occurred to the revisers, after much reflection, that there can be no reason why a short, summary and effectual remedy should not be given when a person willfully withholds public papers. They have accordingly prepared the subsequent sections, which provide for final coercive measures, only in case of a party obstinately refusing to deliver and to swear that he has delivered all the papers within his knowledge.” The aim of the revisers was to give this remedy “ only ” when the case was so clear that the conduct of the party in refusing to deliver could be called willful or obstinate, terms absolutely inapplicable to a case in which a person in good faith holds possession of an office supposing himself to be its lawful *179 incumbent, and, with that possession, the custody of books and papers essential to the proper discharge of its duties.
In applying these principles to the present case it is proper to see what this motion involves.
The claim of Mr. Bridgman is that Mr. Hall was only appointed to act during the absence of Mr. Church; that if the office of chamberlain was then vacant by the misconduct and flight of its incumbent, the appointment of Hall as a temporary one during such absence was void, or if good as a temporary appointment it ceased with Church’s return and resignation.
The claim of Mr. Hall, on the other hand, is that, it being conceded that Church was a defaulter and a fugitive the office of chamberlain became vacant, and that the mayor’s nomination and selection of Mr. Hall to perform its duties under such circumstances was in law an appointment to fill the vacancy; or if this position be not maintainable, then that the decision of this court, in the action to recover the possession of the office, in which the validity of defendant’s title thereto was involved and which title is the same as now made, “ that the defendant, Benjamin H. Hall, is the chamberlain of the city of Troy, and has been such chamberlain since the 26th day of January, 1885,” is conclusive as to the validity of the appointment under which he claims and holds.
The determination of these claims between the parties involves, 1st. A construction of several important parts of the charter of the city of Troy; 2d. The settling of the facts in regard to the alleged defalcation and flight of chamberlain Church; 3d. Whether or not by those facts the office became vacant; 4th. The meaning, intent and legal effect of the nomination by the mayor of Mr. Hall. Was it intended to give, or did it in law give to Mr. Hall the title to a vacant office, or was it void as attempting to do what the mayor could not do, to wit: temporarily fill a vacant office; or, if good as a temporary appointment, what effect did the resignation by Church and the appointment of Bridgman have ? 5th. *180 The effect of the judgment of this court in the action to recover the office; 6th. How far can the legal effect and operation of the judgment be controlled by the proceedings of the trial showing the intent and reasons of the judge rendering the judgment and decision; or must the party, if he wishes to control the effect of the broad words used — “ Benjamin H. Hall is the chamberlain of the city of Troy; ” not that he is in the lawful possession of the office under an appointment by the mayor “to discharge the duties of the office,” as the charter provides, “ in the event of the sickness or absence of the chamberlain * * * during such sickness or absence ” — apply for a modification or amendment of the judgment; and how far is the declaration of the effect of the judgment contained in the roll restrictive of its operation ?
It is not my purpose or design to argue or discuss any of these questions. The attempt so to do would almost involve a decision. They are difficult questions, so difficult as to prevent me from holding that the title of Hr. Bridgman is so clear and free from doubt that Hr. Hall’s conduct in refusing to surrender the books and papers of the office is either “ willful ” or “ obstinate.”
In Case agt. Campbell, in which the general term of this department (17 Weekly Dig., 473) held that a county judge had no power to take evidence as to the vote cast for the office of supervisor of a town, to determine the right to the books and papers belonging to the same office, and which case was before me upon a motion to vacate the stay granted pending an appeal, the questions of law and fact were less intricate than those in the present case, and the decision then made must control. The court, in the case referred to (see also the opinion of the judge writing this opinion, in same proceeding and cases therein cited, 2 How. [N. S.], 85), further held: “ There is a dispute as to the title of the office. The proceedings taken here are not to be used as a substitute for an action of quo warranto. The people must sue to oust *181 an intruder, and probably the alleged intruder is entitled to a jury trial.” These remarks are applicable to the present case. “ There is a dispute as to the title of the office.” The individual against whom the proceeding is taken believes in good faith (see his affidavit) that he is the lawful incumbent of the office to which the books and papers belong. This fact not only takes the case out of the intent which its framers had in view in reporting the statute upon which this proceeding is predicated, but it also brings us face to face with another difficulty, which is this: The possession of the books and papers does not give possession of the office. Mr. Hall, though the books and papers of the office were taken from him, would still possess and exercise the functions of chamberlain of the city of Troy. He would still be the custodian of its funds and possessor of its powers. The removal from his care of the books and papers would only cripple and embarrass him in the discharge of the duties, by which the municipality alone would suffer. Should, under such circumstances, the order be made? The answer is clear—it should not. If Mr. Bridgman is right in his views he can recover in the course of a very few months, at the farthest, the office and its emoluments during the time Mr. Hall has withheld its possession from him. The questions involved are too important, in my judgment, to be disposed of in this summary manner. If I am wrong in this view, however, then this speedy determination of the present proceeding, to which he was clearly entitled, will enable him to review and correct any error at the coming general term, now only two months distant.
The application is denied, but without prejudice to an action to recover the office.