Westbrook, J.—[After stating the facts.]
A preliminary objection made in behalf of Mr. Hall must be first considered, which is this: Do the provisions of the Revised Statutes under which this proceeding is instituted apply to the office—-chamberlain or treasurer of a municipal corporation created by special charter—which each of the parties to this proceeding claim to be entitled to ?
If this was an original question, now for the first time presented, there would, as it seems to me, be no difficulty in giving it a negative answer. The proceeding is instituted under article 5, title 6, chapter 5, and part 1 of the Revised Statutes (1 Edm. 114; 1 R. S. 114 [2d ed.] 1 R. S. [7th ed.] 376). The chapter is entitled (1 Edm. 85): “Of the public offices of this State, other than militia and town officers ; their election or appointment; their qualifications and the tenure of ' their offices.” Title 1 of that chapter is entitled (1 Edm. 86): “ Of the number, location and classification of the public officers of the State.” That title then proceeds to classify, name and locate the officers, who in the title of that chapter are called “the public officers of this State,” and in that title, “ the public officers of the State,” and among them is no such officer as these parties profess to be. Article 5 of title *277 6 (that under which the present proceeding is instituted) is entitled (1 Edm. 114): Proceedings to compel the delivery of books and papers by public officers to their successors.”
From this statement it would seem reasonably clear that the term public officers,” used all through the chapter, and who are also therein called The public officers of this State ” and the public officers of the Statef and who are also named, located and classified in the same chapter, cannot possibly include an officer not named, and who, instead of being one of the public officers of this State f or of the Statef is simply and only an officer of a municipality or city created by special charter. It would seem to be almost as proper, in the absence of an express statute, to call an officer of a railroad or other corporation a public officer of the State” as to calla public officer of a city, created by special charter, by that name.
The difficulty, however, with this line of thought is that the practice has been the other wmy in the State, and courts and judges have, though without the point being made, acted upon the assumption, that the statute reaches officers of the character of that which this proceeding involves. Sitting as a single judge, the officer to whom this application is made, dislikes to disturb a long practice ; but certainly the point is well worthy of the attention of an appellate tribunal. While refusing, therefore, to dismiss the present application upon this ground alone, the point nevertheless adds one more difficulty to several others about to be stated, which compel the denial of the present application.
Conceding, however, that the statute is applicable to a city officer not named therein, should the order asked for by Mr. Bridgman be granted? "
The current of authority is that only in a clear case, or in one free from reasonable doubt, should the *278 authority conferred by the statute be exercised (North v. Cary, 4 Supm. [T. & C.] 357; People v. Allen, 42 Barb. 203; People ex rel. Kilbourn v. Allen, 51 How. Pr. 97-99,100). The case should be wry clear, because the revisers of our statutes, in reporting the provision, said (3 R. S. 444, 2d edition): “It has occurred to the revisers, after much reflection, that there can be no reason why a short, summary and effectual remedy should not be given when a person willfully withholds public papers. They have accordingly prepared the subsequent sections, which provide for final coercive measures, only in case of a party obstinately refusing to deliver and to swear that he has delivered all the papers within his knowledge.” The aim of the revisers was to give this remedy “ only ” when the case was so clear that the conduct of the party in refusing to deliver could be called willful or obstinate—terms absolutely inapplicable to a case in which a person in good faith holds possession of an office, supposing himself to be its lawful incumbent, and, with that possession, the custody of books and papers essential to the proper discharge of its duties.
In applying these principles to the present case, it is proper to see what this motion involves.
The claim of Mr. Bridgman is that Mr. Hall was only appointed to act during the absence of Mr. Church; that if the office of chamberlain was then vacant by the misconduct and flight of its incumbent, the appointment of Hall as a temporary one during such absence was void, or if good as a temporary appointment, it ceased with Church’s return and resignation.
The claim of Mr. Hall, on the other hand, is that, it being conceded that Church was a defaulter and a fugitive, the office of chamberlain became vacant, and that the mayor’s nomination and selection of Mr. Hall to perform its duties under such circumstances was in *279 law an appointment to fill the vacancy ; or if this position be not maintainable, then that the decision of this court, in the action to recover the possession of the office, in which the validity of defendant’s title thereto was involved, and which title is the same as now made, “ that the defendant, Benjamin H. Hall, is the chamberlain of the city of Troy, and has been such chamberlain since January 26, 1885,” is conclusive as to the validity of the appointment under which he claims and holds.
The determination of these claims between the parties involves, 1. A construction of several important parts of the charter of the city of Troy ; 2. The settling of the facts in regard to the alleged defalcation and flight of chamberlain Church ; 3. Whether or not b those facts the office became vacant ? 4. The meaning, intent and legal effect of the nomination by the mayor of Mr. Hall. Was it intended to give, or did it in law give to Mr. Hall the title to a vacant office, or was it void as attempting to do what the mayor could not do, to wit: temporarily fill a vacant office ; or, if good as a temporary appointment, what effect did the resignation by Church and the appointment of Bridgman have % 5. The effect of the judgment of this court in the action to recover the office; 6. How far can the legal effect and operation of the judgment be controlled by the proceedings of the trial, showing the intent and reasons of the judge rendering the judgment and decision; or must the party, if he wishes to control the effect of the broad words used, —“ Benjamin H. Hall is the chamberlain of the city of Troy not that he is in the lawful possession of the office under an appointment by the mayor “to discharge the duties of the office,” as the charter provides, “ in the event of the sickness or absence of the chamberlain .... during such sickness or absence ”—apply for a modification or amendment of *280 the judgment; and how far is the declaration of the judgment contained in the roll restrictive of its operation ?
It is not my purpose or design to argue or discuss any of these questions. The attempt so to do would .almost involve a decision. They are difficult questions, .so difficult as to prevent me from holding that , the title of Mr. Bridgman is so clear and free from doubt, that Mr. Hall’s conduct in refusing to surrender the books and papers of the office is either “willful” or “ obstinate.”
In Case v. Campbell, in which the general term 'of • this department (17 Weekly Dig. 473) held that a •county judge had no power to take evidence as to the vote cast for the office of supervisor of a town, to determine the right to the books and papers belonging to the same office, and which case was before me upon :a motion to vacate the stay granted pending an appeal, .the questions of law and fact were less intricate than those in the present case, and the decision then'made .must control. The court, in the case referred" to (see also the unreported opinion of the judge writing this opinion in the same proceeding and cases therein cited*) further held : “There is a disputeas to the title of the office. The proceedings taken here are not to be used as a substitute for an action of quo warranto. The people must sue to oust an intruder, and probably the alleged intruder is entitled to a jury trial.” These remarks are applicable to the present case. “There is a dispute as to the title of the office.” The individual against whom the proceeding is taken believes in good faith (see his affidavit) that he is the lawful incumbent of the office to which the books and papers belong. This fact not only takes the case out of the intent which its framers had in view in reporting the *281 statute upon which this iwoceeding is predicated, but it also brings us face to luce with another difficulty, which is this : The possession of the books and papers does not give possession of the office. Mr. Hall, though the books and papers were taken from him, would still possess and exercise the functions of chamberlain of the city of Troy. He would still be the custodian of its funds and possessor of its powers. The removal from his care of the books and papers would only cripple and embarrass him in the discharge of the duties, by which the municipality alone would * suffer. Should, under such circumstances, the order be made? The answer is clear, it should, not. If Mr. Bridgman is right in his views, he can recover in the course of a very few months, at the farthest, the office, and its emoluments during the time Mr. Hall has wi h-held its possession from him. The questions involved are too important in my judgment to be disposed of in this summary manner. If I am wrong in this view, however, then this speedy determination of the present proceeding, to which he was clearly entitled, will enable Mm to review and correct any error at the coming general term, now only two months distant.
The application is denied, but without prejudice to an action to recover the office.

 Reported ante, p. 268.